**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**CIVIL ACTION NO. 24-CV-11341-RGS**

JAMES LUCIEN,

Plaintiff,

v.

BOSTON POLICE OFFICERS JOHN BRAZIL, GEORGE FOLEY, WILLIAM MAHONEY, BRIAN BLACK, ROBERT MANNING, WILLIAM BRATTON, JOSEPH V. SAIA, JR., ROBERT P. DUNFORD, JOSEPH DUNFORD, EDWARD J. McNELLEY, HAROLD C. PREFONTAINE and UNKNOWN BOSTON POLICE OFFICERS, and the CITY OF BOSTON,

Defendants.

**THE CITY OF BOSTON, JOSEPH SAIA, JR., JOSEPH DUNFORD, EDWARD MCNELLEY, HAROLD PREFONTAINE AND JOHN BRAZIL'S**
**JOINT MOTION TO BIFURCATE**

The City of Boston (the "City"), Joseph Saia, Jr., Joseph Dunford, Edward McNelley and Harold Prefontaine (the "Supervisor Defendants") and John Brazil move this Honorable Court to bifurcate the trial of this matter. As grounds for the motion, the City, Brazil and the Supervisor Defendants state as follows:

**Preliminary Statement**

1. In reaching its decision on summary judgment, the Court noted that "the doctrines of *respondeat superior* and vicarious liability have no place in § 1983 municipal actions" and that "without a finding that defendant officer violated plaintiff's federal constitutional rights, there can be no finding of liability on the part of the officer's supervisor or municipal employer." ECF Doc.

No 119. For this reason, the Court noted that "it has typically been the court's practice to bifurcate claims against municipal defendants from the trial of the underlying constitutional violation," without deciding the issue. *Id*. The City and Supervisor Defendants now seek to have the claims based directly on the contemporaneous acts of Boston Police Department ("BPD") investigators Brazil, Mahoney and Foley bifurcated from the claims against the Supervisor Defendants for alleged deliberate indifference and the City under *Monell v. Dept. of Soc. Servs. Of City of New York*, 436 U.S. 658 (1978) ("*Monell*") based solely on alleged deliberate indifference, failure to train, failure to supervise, failure to discipline or a purportedly widespread culture of constitutional violations within BPD or "code of silence." There should be a finding that the investigators committed a constitutional violation before the Court conducts a lengthy trial to determine whether the deliberate indifference of the City and Supervisor Defendants caused it.

2. To that end, the City requests bifurcation of this matter into two trials, with the claims[1] to be divided as follows:

| **Trial One – October 5, 2026** | **Trial Two – Date TBD** |
|---|---|
| • The § 1983 claims as asserted against Brazil (Counts 1-3)<br><br>• As a prerequisite for potential *Monell* and supervisory liability claims in a second trial, any underlying constitutional violations alleged to have been committed by the deceased BPD investigators Mahoney and Foley<br><br>• The intentional torts (Count 5 and 6), MCRA (Count 9) and conspiracy (Count 10) claims against Brazil | • The *Monell* claims asserted against the City (Counts 1-3)<br><br>• The supervisory liability claims against the Supervisor Defendants (Counts 1 and 2) |

[1] A chart of which claims remain to be tried against which defendants is in the following section.

| | |
|---|---|
| • the remaining negligence-based tort claims against the City (Counts 7 and 8) | |

3. Dividing the case into two trials in this matter makes common sense, as it would ensure that Brazil will receive a fair trial and it would promote judicial economy. A defense verdict on Counts 1-3 against Brazil or based on allegations of constitutional violations by Mahoney or Foley would render the second trial unnecessary. The first trial would be laser-focused on the conduct of Brazil, Foley and Mahoney during the investigation and trial of Plaintiff and would not require witnesses or evidence related to the history of the training, supervision and discipline of these officers or potentially a historical review of alleged examples of cover-ups ranging from the findings of the St. Clair Report to news conferences about the criminal activity of former BPD Officer Patrick Rose. Trying the case together would significantly lengthen the trial when there is no guarantee that the jury will make the prerequisite findings requiring trial of the *Monell* and supervisory liability claims. Finally, much of the additional evidence to support the *Monell* and supervisory liability claims is highly prejudicial to Brazil and should be inadmissible as propensity evidence in any trial of the claims against him. Each of these factors weighs in favor of bifurcating the case into two trials.

## Procedural Background

### *The Remaining Defendants*

4. The City, the Supervisor Defendants and defendant John Brazil, who is represented by separate counsel, are the remaining defendants in the case. The Court dismissed former Police Commissioner William Bratton and former Superintendent (Captain at the time of the relevant events) Robert Dunford. *See* ECF Doc. No. 67. Plaintiff voluntarily dismissed defendant Brian Black. *See* ECF Doc. No. 99. George Foley and William Mahoney are deceased and could not be

properly served with process. *See*, *e.g.*, ECF Doc. Nos. 62, 66 and 77. The City never identified any BPD employee named Robert Manning, and in any event, no one by that name appeared in this case, although Plaintiff claims to have had him served with the original (but not the amended) complaint. *See* ECF Doc. No. 26.

***The Remaining Claims***

5. In his amended complaint, plaintiff James Lucien (the "Plaintiff") pleaded eleven counts: (1) § 1983 due process; (2) § 1983 federal malicious prosecution; (3) § 1983 conspiracy to deprive constitutional rights; (4) § 1983 failure to intervene; (5) intentional infliction of emotional distress ("IIED"); 6) state law malicious prosecution; 7) negligence; 8) negligent infliction of emotional distress ("NIED"); 9) violations of the Massachusetts Civil Rights Act (the "MCRA"; 10) state law civil conspiracy; and 11) negligent supervision and retention. *See* ECF Doc. No. 42. During the Rule 7.1 conference in advance of the City's motion for summary judgment, Plaintiff clarified that he was pursuing Counts 1-4 against the City on a municipal liability theory under *Monell*, as well as the tort claims sounding in negligence, Counts 7, 8 and 11. *See* ECF Doc No. 103 at n. 1. At the same conference. Plaintiff clarified that he was asserting Counts 1-4 against the Supervisor Defendants on a theory of supervisory liability, as well as Count 5, 6 and 10. *See* ECF Doc No. 101 at n. 1. Plaintiff also clarified that he was asserting all counts against defendant John Brazil except the negligence-based tort claims, Counts 7, 8 and 11.

6. In opposing summary judgment, Plaintiff confirmed the abandoned claims from the Rule 7.1 conference and further represented that he was no longer pursuing Count 4 against any of the defendants and Counts 5 and 6 against the Supervisor Defendants. *See* ECF Doc. No. 117 at n. 2. The Court then dismissed Count 11 against the City for lack of presentment and "the conspiracy claims against the Supervisor Defendants," Counts 3 and 10. *See* ECF Doc. No. 119. While nine

of the eleven claims remain in the case (1-3 and 5-10), those nine claims are now asserted against the remaining defendants as follows:

| **Count** | **Claim** | **City** | **Supervisor Defendants** | **Brazil** |
|---|---|---|---|---|
| 1 | § 1983 – Due Process | X | X | X |
| 2 | § 1983 – Malicious Prosecution | X | X | X |
| 3 | § 1983 – Conspiracy | X[2] | | X |
| 4 | ~~§ 1983 – Failure to Intervene~~ | | | |
| 5 | IIED | | | X |
| 6 | State Malicious Prosecution | | | X |
| 7 | Negligence | X | | |
| 8 | NIED | X | | |
| 9 | MCRA | | | X |
| 10 | State Conspiracy | | | X |
| ~~11~~ | ~~Negligent Supervision/Retention~~ | | | |

The City requests that the Court bifurcate the case and try the claims related to the allegedly unconstitutional and tortious acts of Brazil, Mahoney and Foley that took place during the investigation and trial of Plaintiff prior to trying the issue of whether the City's customs, practices and policies or the alleged deliberate indifference of the Supervisor Defendants were the moving force behind those constitutional violations.

**Relevant Facts**

7. The facts related to the underlying allegations of constitutional violations and tortious activity are relatively straightforward. On June 25, 1994, just prior to 11:00 p.m., Ryan Edwards was shot and he died of his wounds just after midnight the following day. Edwards made a dying declaration to Officer Brian Black, one of the first officers on the scene, that "somebody shot me from outside the car." There were two other individuals in close proximity to Edwards and the vehicle at the time of the shooting – Plaintiff and Alfred Clarke.

---

[2] The Court's summary judgment order did not address the federal conspiracy claim against the City (Count III) under *Monell* presumably due to the Plaintiff's theory that Brazil and Mahoney engaged in a separate conspiracy to "railroad" Plaintiff. *See* Doc. No. 117 at p. 48 (ECF page 57).

8. Det. Brazil was the homicide investigator assigned to the case, and Sgt. Mahoney was his direct supervisor who also took part in the investigation. Plaintiff's theories include that Det. Brazil and/or Sgt. Mahoney: (1) fabricated a story about a gun swap to cover for the fact that Clarke stated that he owned a gun of the same caliber and type as the murder weapon; (2) fabricated a story about a discarded gun and manipulated Judith Edwards into telling it; (3) coerced Erica Jones into fabricated testimony; (4) fabricated testimony from Clarke that Plaintiff poked Edwards with the gun rather than hitting him in the head; (5) fabricated the money and pager evidence; (6) suppressed evidence of the dying declaration; (7) failed to collect or destroyed the victim's clothes; (8) "suppressed evidence that he fabricated evidence"; and (9) suppressed evidence of helping Clarke avoid deportation. Officer Foley was assigned to ballistics and recovered a cartridge case from the vehicle and the bullet from the victim's body. The cartridge and vehicle were tested for fingerprints. Plaintiff alleges that Officer Foley, in concert with Sgt. Mahoney and Det. Brazil, suppressed exculpatory evidence by not requesting gunshot residue evidence analysis from the inside of the vehicle.

9. The criminal trial of Plaintiff took place in late November, 1995. Prior to the start of trial, Black told the Assistant District Attorney about the dying declaration, and this information was relayed to defense counsel. Prior to rendering its verdict, the jury submitted a question indicating that they believed the beeper and money in the photos of the scene to be different than those Det. Brazil brought to trial as evidence. The jury nonetheless returned a guilty verdict.

10. The evidence Plaintiff intends to support the claims against the City and the Supervisor Defendants would significantly lengthen the trial. Plaintiff seeks to offer evidence of Foley's history with the department, including the Supervisor Defendants' knowledge and handling of Foley's mental breakdown during the Mulligan investigation. Plaintiff also seeks to

admit evidence of Brazil's alleged misconduct working in District E-5 with disgraced detectives involved in the Mulligan and Sean Ellis investigations, among others. Plaintiffs wishes to offer evidence that Brazil fabricated search warrants and stole money from crime scenes while at District E-5. Plaintiff opposed summary judgment with a USDOJ Press Release, the St. Clair Commission Report, newspaper articles about scandals from the 1970s through the 1990s. Plaintiff seeks to prove *Monell* liability by offering a series of historical BPD Rules to show that they were deficient on their face.[3] Plaintiff admits that he has "marshalled" a "plethora" evidence he intends to offer to "establish a general pattern or repeated behavior in BPD that provided notice of the risk that exculpatory or impeachment evidence would be suppressed in criminal cases," including evidence of indictments, investigations and criminal convictions of BPD officers in the 1980s and 1990s. Plaintiff is open about its intent to offer the Internal Affairs Division ("IAD") histories of Mahoney, Brazil and Foley, regardless of the outcome of those investigations. Plaintiff also seeks to hold the City liable for an amorphous "code of silence" that it would prove with evidence that includes details of the 1995 assault of now-Commissioner Cox.

**Argument**

11. Bifurcation is warranted here for several reasons. Pursuant to Fed. R. Civ. P. 42(b), the Court may order separate trials of one or more claims "[f]or convenience, to avoid prejudice, or to expedite and economize." Only one of the criteria set forth in Rule 42(b) need be present for

---

[3] Plaintiff argues that the ultimate policymaker, Commissioner Bratton, failed to disclose evidence of Foley's mental health issues and contends that this information was *Brady* material. Ignoring, for a moment, the inaccuracy of Plaintiff's contentions regarding the timeline of Foley's mental breakdown, Commissioner Bratton was dismissed from the case. Moreover, Commissioner Bratton departed BPD months before Edwards was killed – he could not have committed a *Brady* violation as the ultimate policymaker. The City did not, as Plaintiff suggested in his opposition to summary judgment, waive summary judgment because it did not address this theory, but rather did not address the theory because it makes no sense.

the Court to order a separate trial. *See, e.g., Ricciuti v. New York City Transit Authority*, 796 F. Supp. 84, 86 (S.D.N.Y. 1992) (finding all three factors in § 1983 case). "A paramount consideration at all times in the administration of justice is a fair and impartial trial to all litigants." *Martin v. Bell Helicopter Co.*, 85 F.R.D. 654, 658 (D. Colo. 1980) (trials on liability and damages).

**A. Bifurcation is Necessary to Ensure that the Investigators Receive a Fair Trial**

12. Of primary importance here is the fact that much of the evidence intended to be offered to prove the *Monell* and supervisory liability claims would prejudice the investigators – Brazil, Mahoney and Foley – in defending the constitutional claims against them.[4] Federal Rule of Evidence 404(b)(1) bars the use of any other "crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Under Fed. R. Evid. 403, the "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

13. Bifurcation is warranted when the officers face potential undue prejudice because evidence on the issues relating to the city might contaminate the jury in weighing issues relating to the officers. *See Hutchins v. McKay*, 285 F.Supp.3d 420 (D. Mass. 2018) (prior bad acts by the individual officers relevant to the *Monell* claim, but inadmissible against individual officers).

[4] As the Court is aware, Mahoney and Foley are long deceased, and despite ongoing efforts on the part of Plaintiff to substitute the City or the estates for these deceased defendants or to reopen their estates, no one has been, or can be, properly served on their behalf for the claims asserted against them. Nonetheless, as bifurcation is intended to be convenient, expeditious and economical, the City proposes putting the issue of whether Mahoney and Foley committed any constitutional violations to the jury in the first trial, rather than during the trial of the *Monell* and supervisory liability claims. Doing so would mean that a defense verdict on the constitutional claims in the first trial would require dismissal of the second trial in its entirety.

Here, Plaintiff is clear that he intends to prove the claims against the City and the Supervisor Defendants by showing that they were aware of the investigators' prior histories with IAD, and in the case of Brazil, investigation by the Anti-Corruption Division into his alleged activities at District E-5 that ultimately led to the conviction of two other detectives based in part on his testimony given under an immunity agreement with federal prosecutors. The claims against the Supervisor Defendants are based in part on their knowledge of Officer Foley's mental breakdown, evidence of which would prejudice him unfairly as the jury weighs whether he violated the constitution in performing his ballistics analysis. This conflict between the blatant inadmissibility of this evidence in a trial of the investigators and its potential relevance as admissible evidence in a trial of the *Monell* and supervisory liability claims warrants a "classic exercise of the trial court's management discretion" to bifurcate the case for trial. *Lund v. Henderson*, 807 F.3d 6, 12 (1st Cir. 2015) (evidence of prior bad acts excluded from trial of individual officers and separate trial held for claims against the City). Furthermore, voluminous evidence of historical BPD customs and policies, the history of issues within BPD dating back to the 1980s is likely to confuse the jury and prejudice the investigators in defending the claims against them. Bifurcation is the only way to resolve this evidentiary conflict.

**B. Bifurcation Will Promote Judicial Economy**

14. The existence of an underlying constitutional injury is an essential element to the *Monell* claim. *See City of Los Angeles v. Heller*, 47 U.S. 796, 799 (1986). An officer's municipality cannot be found liable without first finding that the officer actually caused a constitutional injury in this particular incident. *Id*. Bifurcation is particularly appropriate where there is "the possibility that the resolution of the first phase would moot the need for the second phase." *Lund*, 807 F.3d at 12; *see also Wilson v. Town of Mendon*, 294 F.3d 1, 7 (1st Cir. 2002)

(discussing the appropriateness of bifurcation where the resolution of one issue may eliminate the need to try another issue).

15. Here, a defense verdict for Brazil and a finding that Foley and Mahoney did not commit any constitutional violations would require entry of judgment on the *Monell* and supervisory liability claims as a matter of law, eliminating the need for a second trial. On the other hand, should Plaintiff obtain a judgment in his favor against Brazil or a finding that Mahoney and/or Foley committed a constitutional violation, there is no fear that Plaintiff will abandon the remaining claims (as was the Court's concern in *Hutchins*, when it elected to try the claims in reverse order) and the possibility that the case will settle before a second trial greatly increases. Although this is not the typical case of indemnification forcing a municipality's hand to satisfy the judgment against the individuals (as discussed in *Wilson*) – even if they were proper parties, the City does not indemnify long deceased officers and to this point, the City has declined to exercise its right to indemnify Brazil under M.G.L. c. 258, § 9 – the Court should still bifurcate the trial. Even if the City elected to indemnify Brazil, it could only do so up to $1,000,000 under the statute, a number not likely to exceed a potential verdict in favor of Plaintiff given the number of years he spent in prison. Should the Plaintiff get a verdict, however, the second trial will concern not only the City's own potential uncapped liability, but the potential liability for former BPD employees it is likely to indemnify – the Supervisor Defendants.

16. The possibility of avoiding a second trial strongly weighs in favor of bifurcation. This is particularly true here where the evidence required to prove the *Monell* and supervisory liability claims dwarfs the evidence necessary for the underlying constitutional and tort claims, and there is little to no overlap between the evidence that would be offered in the two trials. Simply stated, Plaintiff seeks to put the entire BPD from the 1970s, 1980s and 1990s on trial in order to

prove the *Monell* claim. He seeks to show that Brazil and Mahoney were bad cops, and Foley a mentally ill cop, in order to establish municipal and supervisory liability. All of that requires extensive evidence that should be inadmissible in the trial of the underlying constitutional claims against those officers. None of it is necessary if Plaintiff cannot first prove that Brazil, Mahoney or Foley committed a prerequisite constitutional violation in the investigation of Plaintiff for the murder of Ryan Edwards. Convenience, expeditiousness and judicial economy demand bifurcation of the trial of the underlying constitutional claims and the *Monell* and supervisory liability claims.

**WHEREFORE**, the City, Brazil and the Supervisor Defendants respectfully request that this Honorable Court grant their motion, bifurcate the trial of this matter as requested herein, and grant such other and further relief as this Court deems just and proper.

Dated: September 14, 2026

Respectfully submitted,

**CITY OF BOSTON, JOSEPH SAIA, JR, JOSEPH DUNFORD, EDWARD MCNELLEY AND HAROLD PREFONTAINE**

By their attorneys,

MICHAEL FIRESTONE
Corporation Counsel

/s/ Edward F. Whitesell, Jr.
Edward F. Whitesell, Jr. (BBO#644331)
Senior Assistant Corporation Counsel
Adam D. Johnson (BBO#679142)
Senior Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
(617) 635-4045 (EFW)
(617) 635-4097 (ADJ)
edward.whitesell@boston.gov
adam.johnson@boston.gov

**JOHN BRAZIL**,
by his attorneys,

/s/ Joseph G. Donnellan
Joseph G. Donnellan, BBO# 558060
Rogal & Donnellan, P.C.
100 River Ridge Drive, Suite 203
Norwood, MA 02062
(718) 255-1200
jdonellan@rogalanddonnellan.com

**Certificate of Compliance with Local Rule 7.1(a)(2)**

I, Edward F. Whitesell, Jr., hereby certify that, in accordance with Local Rule 7.1(a)(2), counsel for the parties conferred by telephone on September 14, 2026 and attempted in good faith to resolve or narrow the issues raised by this motion and were successful in resolving some issues to narrow the scope of the motion, but were unable to resolve all issues raised herein.

/s/ Edward F. Whitesell, Jr.
Edward F. Whitesell, Jr.

**Certificate of Service**

I, Edward F. Whitesell, Jr., hereby certify that on September 14, 2026, a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants.

/s/ Edward F. Whitesell, Jr.
Edward F. Whitesell, Jr.