**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JAMES LUCIEN,<br><br>Plaintiff,<br><br>v.<br><br>JOHN BRAZIL, JOSEPH V. SAIA, Jr., JOSEPH DUNFORD, EDWARD J. McNELLEY, HAROLD C. PREFONTAINE, and the CITY OF BOSTON,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:24-cv-11341<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S TRIAL MEMORANDUM**

## I. BACKGROUND

Plaintiff was wrongly convicted of murder for the shooting death of Ryan Edwards on June 25, 1994. Plaintiff's conviction was overturned and he was exonerated after it was belatedly disclosed after his conviction and final judgment that multiple investigators from that case were found either to have a history of lying under oath and falsifying evidence in order to quickly close cases, or to be too mentally incompetent to investigate near the time of the investigation. This information was crucial because it was not disclosed to Plaintiff or his counsel before or during trial. Due to fabricated evidence that falsely pointed towards Plaintiff and suppressed exculpatory evidence that would have weakened the prosecution's case, the jury was wrongly convinced that the investigators had gotten the true culprit.

Apart from evidence that was suppressed and/or manufactured at trial, the physical evidence pointed toward a man named Alford Clarke. Instead of investigating him, determined to quickly close the case, and suffering from tunnel vision—focusing only on one suspect to the exclusion of others with no willingness to question their theory—Defendant Brazil and other officers wrongly concluded that Plaintiff shot the fatal bullet and suppressed and/or destroyed

evidence to the contrary. They also manufactured evidence to cover that it was Clarke and not Plaintiff who shot and killed Edwards.

Plaintiff will testify at trial that Clarke, Edwards, and Plaintiff's childhood acquaintance, Jamal Butler, set Plaintiff up to be robbed during a bogus drug deal. During that robbery, Plaintiff was in the back seat of a two-door car with Edwards in the driver's seat and Clarke in the front passenger seat. After robbing Plaintiff at gunpoint, Clarke got out of the car on the passenger's side, pointed his handgun at Plaintiff from outside of the car, and ordered Plaintiff to exit. Plaintiff feared Clarke would shoot him if he got out of the car, refused to exit, and moved behind Edwards (*i.e.*, as far away from Clarke and his pointed gun as possible). At some point, Clarke shot his gun into the car and hit Edwards on his right side. The car started moving and Plaintiff jumped from the car and ran away.

Responding officers talked to Edwards after he was shot. Boston patrol officer Brian Black will testify that Edwards made a dying declaration that the fatal shot came from outside of the car. But Defendant Brazil, who led the investigation, never generated or produced a report memorializing this statement, even though he learned about it in the weeks after Edwards' death.

The physical evidence supports Edwards' statement that the fatal gunshot was shot from outside the car and could not have come from Plaintiff inside the car. There was no gunshot residue found on Edwards' body or in the car. Experts will testify at trial that a gunshot from where Plaintiff was sitting in the car would have left gunshot residue on both.

In addition, Clarke admitted at Plaintiff's criminal trial that he possessed a handgun with the same caliber as that which killed Edwards. To explain away that fact, Defendant Brazil and other BPD officers concocted a false story of Clarke trading that gun away days before the shooting and a separate, alternative story that Clarke's sister threw away the handgun (so that it

could not be tested for ballistics matches). Plaintiff will present evidence of both fabrications.

Another fabrication came to light at Plaintiff's criminal trial. Defendant Brazil falsely testified to the jury that he recovered money and a pager from the scene of the shooting to falsely convince the jury that Plaintiff committed the shooting while robbing Edwards. During deliberations, jurors noticed that the money and pager presented by Brazil did not match the photos of the items taken on the night of the shooting. Unaware of Brazil's long history of lying under oath and either stealing money from crime scenes or knowing other officers stole money and hiding that fact, the trial judge gave a neutral instruction to the jury, without addressing the fabrication or its importance.

The above misconduct was not committed in a vacuum. The City of Boston had a long policy and widespread practice of suppressing and fabricating evidence, and protecting corrupt officers through direct action, including inadequate supervision, discipline, and training to prevent these unlawful policies and practices. The City of Boston directly acted to hide Brazil's corruption from Plaintiff's defense before Plaintiff's conviction became a final judgment. The City of Boston's actions gave Brazil the opportunity to commit the misconduct that led to Plaintiff's wrongful conviction and also caused Brazil to believe he merely needed to close the case with an arrest, disregarding that he arrested an innocent man.

Moreover, the City of Boston's own internal investigations and history of police misconduct put it on notice that its training, discipline, and supervision of detectives like Brazil and the other investigators was shoddy and would lead to wrongful convictions. It ignored these problems and continued its practices, which led to the misconduct that caused Plaintiff's wrongful conviction.

## II. BIFURCATION

On September 15, 2026, this Court granted Defendants' Motion to Bifurcate. Dkt. 135. For simplicity, and to avoid waiving any legal arguments, this memorandum addresses relevant facts and disputed legal issues Plaintiff anticipates arising in both trials. Plaintiff has also filed motions *in limine* that are each applicable to both trials, with the exception of Plaintiff's motion *in limine* seeking to bar tag-team cross examination, which applies to the first trial only, as counsel for Brazil will presumably not be involved in the second trial on Plaintiff's *Monell* and supervisory liability claims.

Should the Court wish to review issues and claims only pertaining to the first trial (*i.e.*, claims against Defendant Brazil; suppression-related § 1983 due process claims against Defendants Saia, Dunford, McNelley, and Prefontaine; and negligence-based tort claims against the City of Boston), Plaintiff will submit a supplemental memorandum.

## III. DISPUTED LEGAL ISSUES

### A. Liability

The question for the jury will be whether Defendant Brazil, other investigators, and/or police supervisors: (1) fabricated inculpatory evidence that led to Plaintiff's wrongful conviction; (2) suppressed exculpatory evidence from the prosecution and defense that impacted the outcome of Plaintiff's trial; (3) prosecuted Plaintiff without probable cause under federal and/or state law; (4) engaged in a conspiracy to violate Plaintiff's rights under federal and/or state law; (5) committed the above misconduct under the policies and/or customs of the City of Boston so that the City of Boston is liable for the misconduct; (6) intentionally inflicted emotional distress on Plaintiff; (7) acted negligently, including negative infliction of emotional distress on Plaintiff; and/or (8) caused the violation of Plaintiff's rights through coercion or intimidation under state

law.[1]

1. **Plaintiff will prove that Defendant Brazil and/or other investigators violated Plaintiff's right to due process by fabricating evidence.[2]**

Plaintiff will present evidence at trial that Defendant Brazil and/or other investigators fabricated inculpatory evidence against Plaintiff. Police officers violate due process when they fabricate evidence for use against a criminal defendant. *Glossip v. Oklahoma*, 604 U.S. 226, 246 (2025); *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Mooney, v. Holohan*, 294 U.S. 103, 112-113 (1935); *Limone v. Condon*, 372 F.3d 39, 44-45 (1st Cir. 2004) ("[I]f any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit.").

An officer who knowingly fabricates evidence or participates in the fabrication of evidence violates due process if that fabrication causes any deprivation of liberty. *See Alvarez v. City of Worcester*, 605 F. Supp. 3d 304, 311 (D. Mass. 2022) (citing *Halsey v. Pfeiffer*, 750 F.3d 273, 279 (3d Cir. 2014); *Whitlock v. Brueggemann*, 682 F.3d 567, 585 (7th Cir. 2012); *Limone*, 372 F.3d at 44-45) (denying summary judgment on evidence fabrication claim that led to prosecution and conviction); *see also Avery v. Milwaukee*, 847 F.3d 433, 438-43 (7th Cir. 2017). This applies regardless of the form of the fabricated evidence, the stage of criminal case where the fabrication causes a liberty deprivation, or how the evidence impacts the criminal proceedings. *Cf. Manuel v. City of Joliet*, 580 U.S. 357, 368-69 & n.8 (2017) (noting that the corruption of legal process itself violates due process). All Plaintiff must establish is a reasonable likelihood that false evidence deprived him of his liberty. *Alvarez*, 605 F. Supp. 3d at 311.

[1] The issues pertaining to the police supervisors are limited to (2), (4), (5), and (7).
[2] Plaintiff anticipates that Defendants will stipulate that the actions of the Boston officers during the investigation at issue here were undertaken under color of law.

This is true when fabricated evidence is used before the criminal trial. *See McDonough v. Smith,* 588 U.S. 109, 113-18 (2019) (recognizing falsified affidavits, witness coaching, and fabricated DNA analysis as constitutional violations when used to initiate a criminal prosecution). *McDonough* recognizes that fabricated evidence can be used in different forms and stages of criminal proceedings to deprive a defendant of liberty in violation of due process. *Id.*; *see also Buckley v. Fitzsimmons,* 509 U.S. 259, 262-64 (1993) (approving fabrication claim where physical evidence was fabricated before trial and introduced via witness testimony). A valid fabrication claim can also flow from fabricated evidence that law enforcement elicits from a third party. *See*, *e.g.*, *Waters v. Town of Ayer*, No. CV 04-10521-GAO, 2009 WL 10728977, at *15 (D. Mass. Feb. 27, 2009) ("Assisting vulnerable witnesses in fabricating a story is a clear due process violation.") (citing *Limone*, 372 F.3d at 44-45); *see also Taylor v. Chicago*, No. 14-cv-737, 2019 WL 4597383, at *15-16 (N.D. Ill. Sept. 23, 2019) (denying summary judgment on fabrication claims for alleged third-party confessions).

Plaintiff will establish that Defendant Brazil and/or other Boston police investigators fabricated: (1) an alleged gun swap between Clarke and another man, Andrew Neals, to hide that Clarke possessed a gun with the same caliber weapon as the one that killed Edwards on the night of the shooting; (2) the alleged destruction of that same caliber handgun to prevent any ballistics testing (and to explain why ballistics testing was not done); (3) an alleged statement by Erica Jones before trial that Jamal Butler told her that Plaintiff shot Edwards—a statement she disavowed at trial; (4) an alleged statement by Clarke that falsely changed his account of the incident so that it would match the medical examination of Edwards; and/or (5) alleged physical evidence recovered from the scene.

Plaintiff can establish that each of these items of fabricated evidence, either separately or

together, led to Plaintiff's wrongful conviction. Finally, the evidence will support that the fabrications were done knowingly.

2. **Plaintiff will prove that the Individual Defendants violated Plaintiff's right to due process by suppressing exculpatory evidence.**

Plaintiff will present evidence that the individual Defendants and/or the investigators who worked on the Edwards shooting case violated his due process rights by suppressing exculpatory evidence. "[T]he suppression of material evidence favorable to an accused violates due process." *Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly."); *Giglio v. United States*, 405 U.S. 150, 153-55 (1972).

Evidence relating to alternative suspects is material under *Brady*. *See, e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 445-47 (1995) (evidence about alternative suspects allows the defense to attack "the reliability of the investigation" if it shows that investigators were less than energetic in exploring other potential suspects); *Trammell v. McKune*, 485 F.3d 546, 551 (10th Cir. 2007) (suppressing evidence of alternative suspects "could also have been used to cast doubt on police officers' decision to focus their attention ... on [the defendant] rather than" the other suspect); *Lopez v. Massachusetts*, 349 F.Supp.2d 109, 119-20 (D. Mass. 2004) (suppressed police reports of an alternative suspect justified an evidentiary hearing). Alternative suspect evidence is, therefore, "classic *Brady* material" and must be disclosed. *See Boyette v. LeFevre*, 246 F.3d 76, 91-93 (2d Cir. 2001).

The duty to disclose also covers impeachment evidence, even if the evidence is not inherently exculpatory. *See, e.g., Giglio,* 405 U.S. at 154-55. Failing to disclose such evidence violates a plaintiff's right to due process. *See, e.g., Haley v. City of Boston,* 657 F.3d 39, 48 (1st Cir. 2011). This duty applies equally to prosecutors and law enforcement officers. *See id.* at 50;

*Limone*, 372 F.3d at 47; *Drumgold v. Callahan*, 707 F.3d 28, 38 (1st Cir. 2013).

When the government suppresses material evidence favorable to the defense, it violates a criminal defendant's right to due process. *United States v. Agurs*, 427 U.S. 97, 104 (1976); *United States v. González-González*, 258 F.3d 16, 21-22 (1st Cir. 2001). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682 (1985); *see also*, *McCambridge v. Hall*, 303 F.3d 24, 37 (1st Cir. 2002) (a "reasonable probability" is a probability sufficient to undermine confidence in the outcome). As the Supreme Court observed in *Agurs,* "if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." *Agurs*, 417 U.S. at 113. And finally, the government also violates due process "when it fails to preserve irreplaceable evidence possessing exculpatory value that is apparent before its destruction." *Magraw v. Roden*, 743 F.3d 1, 7-8 (1st Cir. 2014).

This was a close case—the physical evidence of the victim's clothes and the lack of gunshot residue inside the car (that would support the victim's own statements introduced at trial that the gunshot came from outside of the car) were exculpatory for Plaintiff. The Commonwealth's whole case was based on Defendant Brazil's fabricated version of the false story told by Clarke. The trial judge expressly commented that Clarke was not credible. It therefore fell on Defendant Brazil, who testified at the criminal trial, to attempt to offer some credibility to the Commonwealth's case. His involvement lent gravitas to the prosecution.

Plaintiff will prove that Defendant Brazil and other officers from the Boston Police Department failed to disclose Brazil's history of corruption and false sworn statements that would have undermined his testimony at Plaintiff's trial. The prosecutor from Plaintiff's criminal

trial will testify that nobody ever told him about Brazil's repeated misconduct before Plaintiff's trial. This suppressed evidence made all the difference at Plaintiff's criminal trial.

At one key point, the jury noticed that the victim's money and pager that Brazil brought to trial did not match the crime scene photos (that is, the serial numbers of the money and the pager itself were different). Rather than hearing about Brazil's history of false testimony and of secretly stealing and/or aiding in stealing money from crime scenes, the jury received a neutral instruction from the judge. So, from the jury's view, Brazil's false evidence could have been the result of an honest mistake; they had no reason to suspect that Brazil would knowingly fabricate evidence or lie under oath. The jury was thus poised to overlook that Brazil had brought false evidence to Plaintiff's criminal trial. Accordingly, knowledge of Brazil's history of false testimony and/or aiding in stealing money from crime scenes would have impacted the jury's view of the evidence in Plaintiff's case.

Plaintiff will also prove that supervisors in the Boston Police Department, Defendants Saia, Dunford, McNeeley, and/or Prefontaine, knew, but did not disclose, that officer George Foley was unable to discern truth from fiction shortly before this investigation. In fact, Foley was not officially cleared for duty until one year *after* Plaintiff's trial. And Foley testified falsely that his absence from work was from an injury, not a mental health condition. The prosecutor will testify that he did not know that this testimony was false. This *Brady* violation was a key reason why Plaintiff's conviction was overturned. That is, without the evidence of Foley's incompetence, the jury was poised to view Brazil's false evidence in a vacuum, rather than seeing it for what it was—one example of misconduct that pervaded the entire investigation. Due to Defendants' failure to disclose this key exculpatory evidence, the jury lacked the context to properly weigh the problems with the investigation.

Additionally, Plaintiff will present evidence that Defendant Brazil hid or failed to maintain the exculpatory evidence that Edwards' clothes did not contain gunshot residue. It was Defendant Brazil's duty to obtain the victim's clothes at the hospital. Plaintiff will present evidence that Defendant Brazil went to the hospital and either did not take possession of the clothes as required, or he did take possession of the clothes and destroyed them. Regardless, his actions hid the exculpatory physical evidence that could have been used along with other evidence to demonstrate that the gunshot could not have come from inside the car and therefore did not come from Plaintiff.

Brazil also failed to disclose to the prosecutor or defense that he was working to help Clarke avoid being deported in exchange for his testimony. This would have been evidence of further incentive for Clarke to lie against Plaintiff.

Finally, Brazil did not disclose to the prosecutor or defense his fabrication of the evidence described above, or his fabrication of other witness accounts to falsely inculpate Plaintiff. If he had, then the defense could have examined Brazil about the false evidence he brought to trial or to undermine the "traded gun story." The failure to disclose his misconduct was exculpatory. Knowing the truth would have devastated the Commonwealth's wrongful case against Plaintiff.

Each of the suppressed pieces of exculpatory evidence created a reasonable probability of a different result at Plaintiff's trial, meaning that the suppression was "sufficient to undermine confidence in the outcome." *Ellsworth v. Warden*, 333 F.3d 1, 4 (1st Cir. 2003) (quoting *Bagley*, 473 U.S. at 682). Each piece of suppressed evidence undermines important elements of the case against Plaintiff and would have tipped the scale toward reasonable doubt, leading a jury to believe that Clarke, not Plaintiff, fired the fatal gunshot.

3. **Defendant Brazil caused legal process against Plaintiff without probable cause under both federal and state law.**[3]

The above facts also give rise to a federal claim that Defendant Brazil initiated legal process against Plaintiff without probable cause. Plaintiff will show that Brazil: (1) caused Plaintiff's seizure under legal process; (2) the seizure was made without probable cause (based on the above-described fabricated evidence); and (3) all criminal proceedings terminated in Plaintiff's favor.[4] *Manuel*, 580 U.S. at 366-67; *Pagán-González v. Moreno*, 919 F.3d 582, 601 (1st Cir. 2019); *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101 (1st Cir. 2013).

Under Massachusetts law, to prove malicious prosecution, Plaintiff must also establish that the investigator instituted criminal prosecution with "malice or improper purpose." *Williams v. City of Boston*, 771 F. Supp. 2d 190, 206 (D. Mass. 2011) (quoting *Afreedi v. Bennett*, 517 F. Supp. 2d 521, 540 (D. Mass. 2007)). "Proof of improper motive requires proof that [the defendant] acted primarily for a purpose other than that of properly carrying out his duties, or was attempting to achieve an unlawful end or a lawful end through unlawful means, or intended to harass, vex, or annoy the Plaintiff [ ]." *Id*. (alterations in original) (quoting *Afreedi*, 517 F. Supp. 2d at 540). It is a reasonable inference that an officer acts with improper motive if the officer initiated criminal proceedings against a person without sufficient evidence that the person committed a crime. *Id*. In other words, malice "may be inferred from a lack of probable cause." *Miller v. Pugliese*, 693 F. Supp. 3d 163, 182 (D. Mass. 2023) (citing *Campbell v. Casey*, 166 F. Supp. 3d 144, 153 (D. Mass. 2016)).

Plaintiff can meet both the federal and state standards to establish prosecution without probable cause/malicious prosecution.

---

[3] This claim has traditionally been referred to as "malicious prosecution," though federal caselaw has eliminated the requirement to establish malice as an element.

[4] Plaintiff anticipates that Defendants may stipulate to the third element.

4. **Defendants conspired to deprive Plaintiff of his rights.**

The evidence will establish that Defendant Brazil worked with one or more other investigator(s) to seek Plaintiff's arrest and prosecution without probable cause. For each category of fabricated evidence described above, Defendant Brazil and one or more other investigator(s), including Supervisor Defendants, were either responsible for suppressing the evidence, making up the evidence, and/or being aware of it and tacitly approving the use of it to secure Plaintiff's arrest without probable cause. The evidence will establish that: (1) Defendant Brazil, and one or more other investigator(s), joined an agreement among themselves to arrest and/or subject Plaintiff to legal process; (2) one or more of the participants in the agreement acted to carry out the agreement (making up inculpatory and hiding exculpatory evidence); and (3) as a result of their agreement and corresponding actions, Plaintiff's constitutional rights were violated. *Santiago v. Fenton*, 891 F.2d 373, 389 (1st Cir. 1989); *Earle v. Benoit*, 850 F.2d 836, 842-45 (1st Cir. 1988). Accordingly, Defendant Brazil can be found liable for conspiracy.

Under state law, Defendant Brazil can be found liable for conspiracy on similar bases. *See Taylor v. American Chemistry Council*, 576 F.3d 16, 34 (1st Cir. 2009) (explaining theories of conspiracy under Massachusetts law); *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1563-64 (1st Cir. 1994) (explaining that a vicarious theory requires proof of a common design or agreement—explicit or implicit—to commit a wrongful act and a tortious act in furtherance of that agreement), abrogated on other grounds by *United States v. Velazquez-Fontanez*, 6 F.4th 205 n.2 (1st Cir. 2021); *Kurker v. Hill*, 44 689 N.E.2d 833, 837 (1998) (noting that a vicarious theory can be pursued with evidence that a defendant provided substantial assistance "with the knowledge that such assistance is contributing to a common tortious plan").

5. **Defendant City of Boston failed to train and/or supervise its detectives.**

Defendant City of Boston caused the above violations of Plaintiff's rights by knowingly allowing Defendant Brazil and the other investigators the discretion to wrongly pursue the prosecution of Plaintiff without adequate training or supervision. This evidence is separately and directly relevant to each individual Defendant's personal liability because it demonstrates evidence of opportunity, state of mind, and knowledge.

This evidence is also relevant to Plaintiff's claims against Defendant City of Boston, which is liable for failing to train and/or supervise its officers if decision-makers either knew, or should have known, that training and supervision was inadequate but nonetheless exhibited deliberate indifference to the effects of those inadequacies. *Young v. Providence*, 404 F.3d 4, 25-29 (1st Cir. 2005); *see also City of Canton v. Harris*, 489 U.S. 378, 390 & n.10 (1989); *Haley*, 657 F.3d at 52. Plaintiff can prevail under this theory by establishing that there was a training program or supervision deficiency in a particular area and the constitutional injury inflicted by an untrained officer was closely related to that deficiency. *Young*, 404 F.3d at 26-28.

Before the investigation at issue here, Defendant's own review of its detective division identified the lack of adequate training and supervision as inadequate to avoid the violation of people's rights. It expressly concluded that its detectives did not have the skills to conduct proper investigations, that its officers engaged in misconduct—including fabricating evidence and hiding exculpatory evidence—and that the supervision of untrained detectives allowed them too much discretion, causing a risk of evidence suppression or fabrication. The conduct of the investigators involved in the investigation of the Edwards shooting exhibited the same deficiencies that the City of Boston understood to be problematic in the detective division. Despite that knowledge, the City of Boston failed to rectify the problems.

Regarding his claim against Defendant City of Boston, Plaintiff will establish at trial that: (1) Plaintiff's constitutional rights were violated as described above; (2) at the time, Defendant City of Boston failed to adequately train or supervise its officers; (3) Defendant City of Boston acted deliberately in that either: its failure to train and/or supervise was highly predictable to cause the violation of constitutional rights; and/or it was on notice of the need to train and supervise Defendant Brazil and other detectives; and (4) the failure to train and/or supervise caused the violation of Plaintiff's rights. *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658, 690–95 (1978); *Canton*, 489 U.S. at 387, 390 & n.10.

Similarly, as to Defendants Saia, Dunford, McNeeley, and Prefontaine, Plaintiff will establish that: (1) Plaintiff's constitutional rights violated were as stated above; (2) when that happened, these Defendants knew that there was a high likelihood that without adequate training and/or supervision a person's rights would be violated so that the failure to train would be deliberately indifferent to that risk; (3) each Defendant's failure to train and/or supervise resulted in a program that was grossly inadequate to prevent the type of harm suffered by Plaintiff; and (4) as an affirmative result of the failure to train and/or supervise, Plaintiff was injured. *See Feliciano-Hernandez v. Pereira-Castillo*, 663 F.3d 527, 533 (1st Cir. 2011); *Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 768 (1st Cir. 2010), *cert. denied*, 131 S. Ct. 1016 (2011); *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582-83 (1st Cir. 1994); *Kibbe v. City of Springfield*, 777 F.2d 801, 803 (1st Cir. 1985), *cert. dismissed*, 480 U.S. 257 (1987).

### 6. Defendant City of Boston failed to discipline officers who engaged in misconduct.

The City of Boston's failure to discipline officers who engaged in misconduct is relevant to Plaintiff's claims against Defendant Brazil and the other investigators because it demonstrates each investigator's opportunity to commit the above misconduct. Defendant City of Boston can

be found liable on this same evidence. *See Rodriques v. Furtado*, 771 F. Supp. 1245, 1258 (1st Cir. 1991); *Barker v. City of Boston*, 795 F. Supp. 2d 117, 124 (D. Mass. 2011).

Plaintiff presents "the requisite pattern of conduct required to establish a custom" of failing to supervise or discipline police officers. *See Aaron v. City of Lowell*, No. 20-cv-11604-ADB, 2022 WL 2953033, at *3 (D. Mass. July 26, 2022). The City of Boston was on notice of its own failure to discipline officers for fabricating evidence, providing false testimony, and suppressing evidence of those fabrications and false information.

The City's own 1992 analysis revealed disciplinary deficiencies in its police department, including: (1) a "lack of adequate documentation"; (2) a lack of "progress sheets or progress reports . . . no checklists for file contents. . . no checklists or memoranda indicating the investigative steps taken"; (3) no indication of supervision; (4) a "disturbing" lack of witnesses contacted through an investigation; and (4) that an incredibly small proportion of complaint investigation resulted in any discipline. *See generally* Dkt. 112-116 (St. Clair Commission Report). In other words, the City's own report put it on notice that its police department failed to discipline, failed to identify those who should be disciplined, and instead disbelieved and discredited citizens complaining of misconduct.

Not only was there evidence and notice of a failure to discipline, but BPD did nothing to fix its lack of discipline by the time of the Edwards investigation. In the intervening two years between the City's report and the Edwards investigation, the City took no action to rectify the problems with the disciplinary process or investigations as identified in its own analysis.

The City's handling of Brazil's corruption is symptomatic of this failure and directly linked to Plaintiff's wrongful conviction. For instance, after Brazil was caught bringing in false evidence into court in Plaintiff's trial, BPD never disciplined him. Further, after Brazil testified

about engaging in corruption, he was provided pay while on leave and then retired with a full pension without any discipline imposed on him. Plaintiff can establish that the City's failure to discipline led to the misconduct described above.

7. **Defendant City of Boston maintained a custom to tolerate a "code of silence" allowing officers to engage in misconduct with impunity.**

Another area of relevant opportunity and knowledge evidence is the City of Boston's tolerance of a "code of silence" whereby officers would hide misconduct committed by fellow officers. This evidence is directly relevant to establish Defendant Brazil and other investigators' opportunities to engage in misconduct and knowledge that they could get away with it.

This evidence is similarly relevant to establish that Defendant City of Boston maintained the custom that amounted to policy allowing officers to hide misconduct, thereby leading to the misconduct described above under the same analysis above.

8. **Defendant Brazil Intentionally Inflicted Emotional Distress (IIED).**

To sustain a claim of IIED under Massachusetts law, a plaintiff must show: (1) that a defendant "intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." *Bazinet v. Thorpe*, 190 F.Supp.3d 229, 240 (D. Mass. 2016) (citing *Polay v. McMahon*, 10 N.E.3d 1122, 1128 (Mass. 2014)).

To be considered extreme and outrageous, the defendant's conduct must go "beyond all possible bounds of decency, and [be] regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 240 (quoting *Polay*, 10 N.E.3d at 1128). "Police officers fabricating evidence in an effort to obtain criminal charges against an innocent citizen . . .would be sufficient to meet the high standard for a claim of IIED." *Id.* (citing *Limone v. United States*, 497 F. Supp. 2d 143, 227 (D. Mass. 2007) (framing innocent men was extreme and outrageous conduct for IIED))).

As detailed above, Brazil participated directly and conspired to manufacture evidence, including false witness statements, to prosecute and convict Plaintiff of a homicide he did not commit, and he withheld other evidence that would have allowed Plaintiff to defend himself against the false charges. This evidence is sufficient to establish and IIED claim.

9. **The City of Boston is liable for negligence and negligent infliction or emotional distress.**

Under the Massachusetts Tort Claims Act, the City of Boston is liable for the negligent actions of itself and its employees. To prevail on his claim of negligence against the City of Boston, Plaintiff must prove that the City had a duty to train Boston police officers on their constitutional obligation to disclose exculpatory evidence, breached this duty, and that breach caused Plaintiff's harm. *Jorgensen v. Mass. Port Auth.*, 905 F.2d 515, 522 (1st Cir. 1990); *Chaabouni v. City of Boston*, 133 F.Supp.2d 93, 96-98 (D. Mass. 2001). Plaintiff can establish its liability through proving the City of Boston negligently caused the suppression of exculpatory and/or impeachment evidence and Plaintiff's wrongful conviction by failing to (a) supervise, (b) promulgate policies for, and/or (c) adequately train police officers to adhere to their duty to disclose exculpatory evidence, and/or by failing to create a system of adequate record-keeping to ensure that all exculpatory evidence was disclosed.

The City is also liable when it caused the negligent infliction of emotional distress by its employees. To prevail on his claim of negligent infliction of emotional distress, Plaintiff must establish: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." *Sullivan v. Boston Gas Co.*, 414 Mass. 129, 132 (1993) (quoting *Payton v. Abbott Labs*, 386 Mass. 540, 557 (1982)). The actions described above

are sufficient to meet items one through three above. As discussed below, Plaintiff's damages will meet items four and five.

10. **Defendant Brazil violated the Massachusetts Civil Rights Act (MCRA).**

By coercing witnesses to provide false stories to implicate Plaintiff, Defendant Brazil violated the MCRA, which "provides a cause of action against a person who has interfere[d] by threats, intimidation or coercion with the exercise of rights secured by the state or federal constitutions or laws." *Bazinet*, 190 F.Supp.3d at 238 (cleaned up) (quoting Mass. Gen. Laws ch. 12, §§ 1 lH, 111). In order to establish a claim under the MCRA, a plaintiff "must prove that (1) [his or her] exercise [or] enjoyment of rights secured by the Constitution or the laws of either the United States or the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion." *Id*. (quoting *Roman v. Trustees of Tufts Coll.*, 964 N.E.2d 331, 337 (Mass. 2012)). Plaintiff can establish these elements against Defendant Brazil.

**B. Damages**

As a result of Defendants' violations of Plaintiffs rights, as described above, Plaintiff suffered serious harm. He was wrongfully imprisoned for more than 26 years.

Plaintiff will ask the jury to award the following categories of damages:

1. The reasonable value of each day of confinement, and associated physical, mental, and emotional injuries, that would not have occurred had the Defendants not taken the actions that Plaintiff alleges.
2. The physical harm to Plaintiff during and after the events at issue, including the pain of any physical confinement, ill health, disability, or discomfort, including any physical harm that Plaintiff is reasonably certain to experience in the future.

3. The mental or emotional pain and suffering that Plaintiff has experienced in the past and is reasonably certain to experience in the future, including fear, shock, paranoia, humiliation, despondency, and mental anguish.
4. The loss of normal life that Plaintiff has suffered in the past and is reasonably certain to experience in the future.

## III. PLAINTIFF'S PROPOSED STATEMENT OF THE CASE FOR THE FIRST JURY

Plaintiff was arrested in 1994 for the shooting death of Ryan Edwards (AKA Shawn Robinson). Plaintiff was convicted of murder relating to the shooting and sentenced to life in prison. His conviction was overturned in 2021, and all charges related to the Edwards homicide were dropped against him in 2023. Plaintiff claims that various City of Boston police officers violated his rights under the United States Constitution because they: (1) caused Plaintiff's arrest and prosecution without probable cause, (2) fabricated evidence that was used to further the investigation and prosecution of him; (3) suppressed evidence that would have shown that he was innocent of anything to do with the shooting; and/or (4) conspired to violate his civil rights. Defendants all deny Plaintiff's claims. Plaintiff has additional claims under Massachusetts law against the Individual Defendants and the City of Boston.

## IV. LENGTH OF TRIAL

Plaintiff believes that the first trial can be completed in seven days. Plaintiff believes that the second trial can be completed in ten days, though that estimate is subject to change depending on the outcome of the first trial.

Date: September 21, 2026

RESPECTFULLY SUBMITTED,

**JAMES LUCIEN**

BY: /s/ Mark Loevy-Reyes
*One of Plaintiff's Attorneys*

Attorneys for Plaintiff
Mark Loevy-Reyes
Meg Gould*
Loevy & Loevy
398 Columbus Avenue, #294
Boston, MA 02116
Ph: (312) 243-5900
Fax: (312) 243-5902
mark@loevy.com

Annalise Wagner*
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
*Admitted pro hac vice

**CERTIFICATE OF SERVICE**

I, Mark Loevy-Reyes, an attorney, hereby certify that on September 21, 2026, I filed the foregoing memorandum using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Mark Loevy-Reyes